UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

**THOMAS GRANT,** individually and on behalf of all others similarly situated,

    *Plaintiff*,

v.

**VIVEK RAMASWAMY**, an Ohio resident,

    *Defendant.*

No. 2:24-cv-00281-MHW-KAJ

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Defendant Ramaswamy's motion to dismiss is wholly lacking in merit.

First, Plaintiff sufficiently alleges Ramaswamy's liability for the prerecorded political campaign calls he received, and that, as a result, Plaintiff's injuries from the call are traceable to Ramaswamy's conduct, by sufficiently alleging that Ramaswamy either personally placed the calls or, alternatively, was so heavily involved in the calls that he can either be deemed to have initiated them or is liable under control based and vicarious theories of liability. Specifically, with regard to each theory, Plaintiff alleges that Ramaswamy determined to whom prerecorded calls would be sent, when they would be sent, and their content, and otherwise knew about and expressly authorized the transmission of the calls for his own personal benefit as a candidate for President without consent, and despite complaints about them. Plaintiff's allegations are sufficient to put Ramaswamy on notice of Plaintiff's claims.

In fact, these are precisely the same types of allegations that have been deemed sufficient at the motion to dismiss stage to assert a TCPA claim against a political candidate arising from his campaign's robocalls. *Rowan v. Pierce*, No. 20-1648 (RAM), 2022 U.S. Dist. LEXIS 14547, at *6-7 (D.P.R. Jan. 21, 2022) (denying 2020 presidential candidate Brock Pierce's motion to dismiss: "In the case at bar, the *Complaint* alleges that Pierce: (1) collected independent voter lists to gather voters' phone numbers;  (2) created and controlled the content of the prerecorded calls; (3) determined to whom the calls should be made; (4) authorized the prerecorded calls; and (5)

sent the prerecorded messages to individuals without first obtaining their consent to receive them. … Plaintiff thereby sufficiently alleges that Pierce had significant control and participation regarding the prerecorded calls. Although said allegations 'may not be sufficient to *prove* any theory of vicarious liability[,] **[t]hey are more than sufficient, however, to entitle [Plaintiff] to further discovery**.'").[1]

Second, Ramaswamy's robocalls are not otherwise exempt from liability. In fact, the exemptions Ramaswamy relies on apply only to robocalls to landline numbers and not to robocalls to wireless numbers.

The Court should deny Ramaswamy's motion to dismiss in total.

## PLAINTIFF'S ALLEGATIONS

As the Supreme Court explained in a case brought by political organizations that wanted to make political prerecorded calls to cellular telephone numbers, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020). Complaint (ECF 1) at ¶ 6.

---

[1] To the extent that Ramaswamy attempts to distinguish the size and operation of his campaign and his resulting personal involvement in the campaign from those of Brock Pierce, *see* Motion at 9-10 & 13-14, it is notable that none of the facts relating to the size or operation of Pierce's campaign or the level of Pierce's general involvement in the campaign were relied on by the court in denying Pierce's motion to dismiss.

Ramaswamy's reliance on the summary judgment order in the case against Pierce is also misplaced at this juncture because the court's summary judgment ruling was based on a full factual record after the close of discovery. *But see Rowan v. Pierce*, No. 20-1648 (RAM), 2023 U.S. Dist. LEXIS 155697, at *31-34 (D.P.R. Sep. 1, 2023) (denying summary judgment motion and finding that a candidate can be held personally liable for robocalls made by the campaign when the candidate knew about the calls and did nothing to stop them).

Since 1991, that fight has taken the form of the Telephone Consumer Protection Act. Under the TCPA, "Political campaign-related autodialed or prerecorded voice calls, including autodialed live calls, autodialed texts, and prerecorded voice messages, are prohibited to cell phones, pagers or other mobile devices *without the called party's prior express consent*."[2] *Id*. at ¶ 14.

These restrictions are necessary because the FCC has found that "During election seasons, consumers will likely experience an increase in calls and texts from political campaign."[3] *Id*. at ¶ 15. In fact, "Every year around Election Day … the Monday before Election Day was the highest day on record for receiving robocalls."[4] *Id*. at ¶ 16.

Vivek Ramaswamy was a 2024 candidate for President of the United States. *Id*. at ¶ 17. In order to promote his telephonic town hall events, Ramaswamy and/or his campaign on his behalf places pre-recorded calls to consumer cellular phones without first obtaining their prior express consent. *Id*. at ¶ 18.

Ramaswamy either expressly authorized the making of these pre-recorded calls or knew that they were going to be made for his personal benefit, to promote his presidential candidacy, and did nothing to stop them—despite actual public complaints from consumers about receiving them. *Id*. at ¶¶ 19, 23-25.

As part of that, by controlling the timing of his telephonic town hall events, Ramaswamy controlled the timing of the prerecorded calls, which were necessarily to be sent right before the events. *Id*. at ¶¶ 20, 23 ("This is Vivek Ramaswamy, … I'm calling you right now to invite you to a live teleforum town hall meeting.").

---

[2] https://www.fcc.gov/rules-political-campaign-calls-and-texts

[3] *Id*.

[4] https://www.wrcbtv.com/story/42706718/political-robocalls-blowing-up-phones-across-the-nation-ahead-of-election-day

Ramaswamy also controlled the recipients of calls, by dictating that the messages be sent to voters registered as independents, like Plaintiff, who had no prior relationship with him. *Id*. at ¶ 21 & n.4 (Ramaswamy explaining in a news article that although he is running as a Republican, he is an independent).

Ramaswamy also controlled or had the right to control the content of the messages, as he is the candidate who ultimately stood to be elected and personally recorded many of the messages transmitted to consumers as part of the pre-recorded calls promoting his town hall meetings. *Id*. at ¶¶ 22-24.

On July 8, 10, and 25, August 8 and 10, September 5, and October 11, 2024, Plaintiff Grants received call from or on behalf of Ramaswamy from to his cell phone inviting him to attend Ramaswamy's telephonic town hall events. *Id*. at ¶¶ 29-37.

Plaintiff Grant never provided any form of consent to Ramaswamy to receive pre-recorded calls. *Id*. at ¶ 38. The unauthorized telephone calls that Plaintiff received from or on behalf of Ramaswamy, as alleged herein, have harmed Plaintiff Grant in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone. *Id*. at ¶ 39.

Seeking redress for these injuries, Plaintiff Grant, on behalf of himself and Class of similarly situated individuals, who received Ramaswamy's unsolicited, pre-recorded campaign-related voice message calls to their cellular telephone numbers. *Id*. at ¶ 40.

## ARGUMENT

**1. Plaintiff Sufficiently Alleges Three Independent Bases for Ramaswamy's Liability**

The TCPA imposes liability under a variety of theories, including direct liability, control based liability, and vicarious liability.[5] At this stage, although Plaintiff is required to plead only

---

[5] While the TCPA also provides for liability based on piercing the corporate veil, prevailing on such a theory is sufficient—but not necessary—to impose liability on an individual for an organization's acts. *Compare Keating v. Peterson's Nelnet, LLC*, No. 1:11 CV 1775, 2014 U.S. Dist. LEXIS 64920, at *13 n.5 (N.D. Ohio May 12, 2014) (granting summary judgment to the defendants on vicarious liability because "Plaintiff has failed to provide any evidence that could

4

one basis for Ramaswamy's liability for the calls, Plaintiff has sufficiently alleged all three (and as a result, sufficiently alleges that his injury is traceable to Ramaswamy's conduct).[6] *See Cunningham v. Cap. Advance Sols., LLC*, No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590, at *17-21 (D.N.J. Nov. 20, 2018) (finding that a motion to dismiss should be denied if a plaintiff sufficiently pleads any one of the multiple liability theories alleged in the complaint).

---

support a finding that any Defendant in this case ever authorized River City to send the text messages at issue," but distinguishing the plaintiff's vicarious liability theory from his veil piercing theory which was inadequately pled) *with* Motion at § II.C (arguing that Plaintiff Grant must pierce the corporate veil to impose liability on Ramaswamy). *See also Rowan v. Pierce*, No. 20-1648 (RAM), 2023 U.S. Dist. LEXIS 155697, at *36 (D.P.R. Sep. 1, 2023) (denying summary judgment against presidential candidate based on vicarious liability theories, but granting summary judgment based on veil piercing theory).

There is likewise no relevance to the unsupported argument that because some other TCPA plaintiffs have chosen to sue political candidates' campaigns, as opposed to the candidates themselves, that Plaintiff has improperly named Ramaswamy as a defendant or should have named his now defunct campaign. Motion at 7, 14.

In fact, the one case Ramaswamy cites regarding political candidates' prospective liability for campaign acts is inapposite because it involved contractual liability, and not tort liability like under the TCPA. *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1282 (5th Cir. 1994) ("A candidate for federal office already has at least two methods by which he could protect himself from **personal liability for the contracts entered into by his principal campaign committee**."); *cf. Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 960 (8th Cir. 2019) ("In the portion of the TCPA creating a private cause of action, the TCPA does not specify against whom the action may be brought. See § 227(b)(3). In the analogous context of tort law, individuals are generally liable for any torts they commit, even those committed in the scope of their employment or in their role as corporate officers. *See Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001). Nor does the TCPA require that an officer's business be found liable before the officer may be held liable, as the defendants argued here. § 227(b)(1). Simply put, 'any person' who violates the TCPA may be liable."); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 416 (D. Md. 2011) ("These cases reflect the general tort rule that 'corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.'").

[6] "Alternative pleading is permitted and is not a basis to dismiss either or both well pled, inconsistent legal theories." *Lunkenheimer Co. v. Pentair Flow Control Pacificpty*, No. 1:11-cv-824, 2014 U.S. Dist. LEXIS 126395, at *18 (S.D. Ohio Sep. 10, 2014).

    a. **Direct Liability**

The TCPA provides for direct liability for the party that makes a violative call. 47 U.S.C. § 227(b)(1)(A)(iii). As the FCC has interpreted the term, "making" a call "can include being 'so involved in the placing of a specific telephone call' as to be deemed to have initiated it.". *Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7980 ¶ 30 (2015). Here, to plead direct liability, Plaintiff Grant alleges facts showing that Ramaswamy was heavily involved in placing the pre-recorded calls at issue, and had control over their timing, recipients, and content.

Specifically, Plaintiff alleges that Ramaswamy controlled the timing of the prerecorded calls by controlling the timing of his telephonic town hall events, which immediately followed the calls. Complaint at ¶¶ 20, 23 ("This is Vivek Ramaswamy, … I'm calling you right now to invite you to a live teleforum town hall meeting.").

Ramaswamy also determined that the messages should be sent to voters who identify as independents, like Ramaswamy himself. *Id*. at ¶ 21 & n.4 (Ramaswamy explaining in a news article that although he is running as a Republican, he is an independent).

And Ramaswamy either drafted or had the authority to revise the message scripts, as he is the candidate who ultimately stood to be elected and he personally recorded many of the messages transmitted to consumers as part of the pre-recorded calls promoting his town hall meetings. *Id*. at ¶¶ 22-24. It is implausible to conclude from these facts that had Ramaswamy wanted to include or exclude specific content from any of the recording for his tele-townhall promoting his presidential candidacy that he would not have had the authority to do so as the candidate himself.

In fact, given that Ramaswamy himself recorded some of the messages, Ramaswamy was or should have been aware that prerecorded voice messages were being transmitted promoting his presidential candidacy and did nothing to stop them despite myriad complaints from recipients of the calls. *Id*. at ¶¶ 19, 23-25.

Plaintiff therefore sufficiently alleges that Ramaswamy placed the calls promoting his presidential candidacy himself or was so involved in placing the calls to be deemed to have initiated it.[7]

### b. **Control Based Liability**

Under the TCPA, an individual such as Ramaswamy, may be personally liable for a TCPA violation under a control based theory pursuant to 47 U.S.C. § 217 of the TCPA, which states:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

See 47 U.S.C. § 217 (emphasis added).

When considering individual officer liability under the TCPA, courts have agreed that a control person involved in the violations at issue may be personally liable under the TCPA. *See, e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("Many courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (cleaned up)); *Universal Elections*, 787 F. Supp. 2d at 415-16 ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

"Courts that have addressed the issue have concluded that individuals acting on behalf of a corporation may be held personally liable for violations of Section 227 if they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"

---

[7] The one case Ramaswamy cites to argue that Plaintiff insufficiently alleges that he initiated the calls is wholly irrelevant. In fact, in *Lucas v. Telemarketer Calling From (407) 476-5680*, No. 18-3633, 2019 U.S. App. LEXIS 16106 (6th Cir. May 29, 2019), the Sixth Circuit affirmed the district court's denial of the plaintiff's motion for leave to amend the complaint to assert a direct liability claim based on the exact 2015 FCC ruling Plaintiff relies on here. *Id*. at *20-21 ("The district court concluded that Lucas's decision to wait until July 2017 to request to amend his complaint based, in part, on a 2015 FCC ruling constituted excessive delay and would result in undue prejudice to the defendants.").

7

*Jones v. Montachusett Reg'l Transit Auth.*, No. 4:19-cv-11093-TSH, 2020 U.S. Dist. LEXIS 51194, at *9 n.3 (D. Mass. Feb. 7, 2020) (citing *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 161 (3rd Cir. 2018); *Universal Elections*, 787 F. Supp. at 415; *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001)); *see, e.g., Williams v. Schanck*, No. 5:15-cv-01434-MHH, 2021 U.S. Dist. LEXIS 116218, at *10-11 (N.D. Ala. June 22, 2021) ("Because the evidence shows that Mr. Schanck personally oversaw and approved of conduct that violated the TCPA, Mr. Schanck is personally liable for Stellar's TCPA violations.").

Here, with regard to Ramaswamy's personal participation in or authorization of the TCPA violative conduct at issue, the same allegations demonstrating he was heavily involved in placing the call such that he could be deemed to have initiated them are sufficient to allege Ramaswamy's liability under a control based theory. Specifically, Ramaswamy controlled the content and timing of the messages, recorded some of the messages himself, determined to whom the messages would be transmitted, and otherwise expressly authorized the transmission of the messages despite consumer complaints about them. Complaint at ¶¶ 18-25.

The allegations here are similar to those in *Maryland v. Universal Elections*, in which the court determined that the plaintiff sufficiently alleged control based liability against two individuals responsible for a political campaign's prerecorded voice calls, and the same result is warranted. *Universal Elections*, 787 F. Supp. 2d at 415-16 (denying motion to dismiss claims for personal liability for a campaign's prerecorded calls where the individual defendants recorded the messages and determined to whom and when the messages would be sent); *see also Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-cv-253, 2012 U.S. Dist. LEXIS 85663 (W.D. Mich. June 21, 2012) (employee purportedly directed the creation of a fax recipient list, approved the form of the fax, determined the number and frequency of fax transmissions, and approved or paid for the fax transmissions); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F. Supp. 2d 1316, 1321 (D. Wyo. 2011) (employee was "directly involved in the collections efforts"; "he supervised collection activities and his voice appeared in the prerecorded messages" in the telephone calls).

### c. Vicarious Liability

"[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification principles. *Klein v. Just Energy Grp., Inc.*, No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *27 (W.D. Pa. June 29, 2016) (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016)); *see also In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6588 (F.C.C. 2013). The existence of an agency relationship is normally one for the trier of fact to decide. *See Ward v. Mgmt. Analysis Co. Emp. Disability Benefit Plan*, 135 F.3d 1276, 1283 (9th Cir. 1988), *rev'd in part on other grounds, UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999).

A plaintiff is required to allege a sufficient basis for any "one of the common law agency theories." *Cunningham*, 2018 U.S. Dist. LEXIS 197590, at *17-21. "[A] plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency." *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016) (relying on the FCC's *Dish Network* opinion issued in a telemarketing context in evaluating vicarious liability for non-telemarketing, TCPA violative calls, like Ramaswamy's prerecorded voice calls). A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sep. 7, 2016).

For TCPA claims specifically, there is a low bar to pleading vicarious liability, as a plaintiff is not expected to allege "facts suggesting that" the defendant: (1) "instructed" the putative agent "to make the call to" the plaintiff, (2) "had any authority over the time, means and manner of" the putative agent's solicitations, or (3) "had the ability to issue instructions … on these subjects." *Dolemba*, 213 F. Supp. 3d at 997 ("But Farmers does not suggest how Dolemba could reasonably be expected to know those facts at this stage in the litigation. Indeed, it is likely that all of the documents and information that establish (or refute) the details of the agency relationship between Farmers and the Lombardi Agency are exclusively within the Defendants' custody and control."); *see Cunningham v. Rapid Response Monit. Servs.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017)

9

("Cunningham has investigated the parties extensively, but inevitably some aspects of their relationships will only come to light in discovery.").

In this case, Plaintiff pleads robust facts giving rise to an inference that Ramaswamy is vicariously liable for the campaigns calls to Plaintiff based on all three agency theories (actual agency, apparent agency, and ratification).[8]

### i. Actual Authority

"Actual authority is the authority that a principal expressly or implicitly gives an agent." *United States v. Martinez*, 613 F.2d 473, 481 (3d Cir. 1980); *Lind v. Schenley Indus.*, Inc., 278 F.2d 79, 85 (3d Cir. 1960) ("'Actual authority' means, as the words connote, authority that the principal, expressly or implicitly, gave the agent."); *see Cunningham*, 251 F. Supp. 3d at 1199 ("The question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and the generally expected course of business ...."). An agent acts with actual authority if it "reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01; *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014) (citing Restatement (Third) of Agency § 2.01)).

Actual agency "does not require the principal to specify the singular acts for which his or her authority exists as long as the acts are incidental to or reasonably necessary to accomplish what

---

[8] The potential involvement of a vendor engaged by the campaign to make the calls (as opposed to the campaign itself making the calls) does not change the analysis regarding Ramaswamy's potential vicarious liability at this stage. To the extent Plaintiff sufficiently alleges Ramaswamy's liability for the campaign's acts, Plaintiff also sufficiently alleges Ramaswamy's liability for the acts of any subagent engaged by the campaign to act on its behalf because it is reasonable to infer based on Plaintiff's allegations that to the extent Ramaswamy authorized the making of pre-recorded calls, he at a minimum impliedly authorized the campaign to engage a vendor to cause them to be transmitted as it is unlikely that the campaign would have the capacity to transmit such messages without a vendor's involvement. Complaint at ¶¶ 18-25. Under the Restatement, "A subagent is a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal." Restatement (Third) of Agency § 3.15(1). "A subagent acts subject to the control of the appointing agent, and the principal's legal position is affected by action taken by the subagent as if the action had been taken by the appointing agent." *Id*. at cmt. b.

is authorized." *Harrington v. Roundpoint Mortg. Servicing Corp.*, 2017 U.S. Dist. LEXIS 55023, at *21 (M.D. Fla. Apr. 10, 2017). "The concept of scope of authority is broad. An agent has authority to act to further the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives. The principal is liable for the acts of the agent to further the principal's purposes unless the agent acts entirely for the agent's benefit only." *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017) (citing Restatement (Third) of Agency § 2.02(1)).

Thus, for a TCPA claim, a plaintiff sufficiently pleads that a defendant directed an agent's calls by alleging facts giving rise to an inference that the defendant was "heavily involved" in the circumstances surrounding the calls. *United States*, 256 F. Supp. at 922-923; *Dolemba*, 213 F. Supp. 3d at 997 ("Of course, these facts may not be sufficient to prove any theory of vicarious liability. They are more than sufficient, however, to entitle Dolemba to further discovery.").

Here, Plaintiff alleges that, to the extent Ramaswamy did not initiate the prerecorded calls to Plaintiff, Ramaswamy actually authorized the campaign to make the calls because he was heavily involved in the circumstances surrounding the calls. Specifically, Ramaswamy controlled the manner and means of its promotion of his presidency by: expressly approving the transmission of the prerecorded messages; determining the content of the prerecorded messages; determining to whom they would be transmitted; determining when they would be transmitted; and recording many of the prerecorded messages. Complaint at ¶¶ 18-22. And Ramaswamy knew (or reasonably should have known) that his campaign was violating the TCPA on his behalf and failed to take effective steps within his power to force it to cease that conduct. *Id*. at ¶¶ 19, 23-25.

Therefore, at this stage of the proceedings, Plaintiff sufficiently shows that Ramaswamy is vicarious liable for any TCPA violative calls made by his campaign on an actual authority theory.

       ii.  ***Apparent Authority and Ratification***

Apparent authority "arises when a third-party reasonably believes that the [] agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations." *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167–68

(D. Idaho 2011).

"To provide guidance in this area," the FCC has provided "illustrative examples of evidence that may demonstrate … apparent authority," including: "the authority to use the [principal's] trade name, trademark and service mark"; "that the [principal] approved, wrote or reviewed the outside entity's … scripts"; and "if the [principal] knew (or reasonably should have known) that the [agent] was violating the TCPA on the [principal's] behalf and the seller failed to take effective steps within its power to force the [agent] to cease that conduct." *Dish Network*, 28 F.C.C. Rcd. at 6592 ("At a minimum, evidence of these kinds of relationships ... should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent").

"Ratification occurs when a principal knowingly chooses to accept the benefits of unauthorized actions an agent takes on the principal's behalf." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016); Restatement (Third) of Agency § 4.01(1) & cmt. d ("Ratification does not require a pre-existing formal agency relationship."). "[R]atification may create a relationship of agency when none existed between the actor and the ratifier at the time of the act. It is necessary that the actor have acted or purported to act on behalf of the ratifier." Restatement (Third) of Agency § 4.01 cmt. b; *see Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019) (citing the Restatement and holding in a TCPA action that "ratification may create an agency relationship when none existed before the acts are 'done by an actor … who is not an agent but pretends to be.'"). To demonstrate prospective ratification, a plaintiff must show that a principal had full knowledge of all the facts, *or* was willfully ignorant of those facts, and manifested an intention to ratify the act in question, or that an agent acted for a principal's benefit and the principal "fail[ed] to object or repudiate an action." *Henderson*, 918 F.3d at 1074-75; *Aranda*, 179 F. Supp. 3d at 831.

Here, Plaintiff sufficiently pleads Ramaswamy's vicarious liability predicated on apparent authority and ratification theories based on the same allegations supporting an actual authority theory. Complaint at ¶¶ 18-25. Ramaswamy personally controlled the content of the prerecorded

12

calls that he himself created, determined to whom the calls should be made, determined when the calls would be made, and otherwise authorized the prerecorded calls. *Id*. Ramaswamy sent out the prerecorded messages to individuals *without first obtaining their prior express consent* to receive prerecorded messages from Ramaswamy—even after consumers complained about receiving those calls. *Id*. Ramaswamy knowingly and willingly violated the TCPA by allowing the sending out of prerecorded messages to individuals from whom he had no prior express consent—including after he knew or should have known that consumers were complaining about the calls—and by personally participating in the TCPA violation for his own benefit.[9] *Id*.

Plaintiff therefore sufficiently pleads Ramaswamy's vicarious liability for the calls to Plaintiff under apparent authority and ratification theories.

### 2. Ramaswamy's Calls Were Not Exempted Under the TCPA

Mr. Ramaswamy mispresents the law by arguing that two exceptions for robocalls made to residential telephone lines apply to robocalls made to cellular telephones. Motion at 17-20. They don't.

The TCPA delineates between claims arising from robocalls made to a "residential telephone line" versus robocalls made to a cellular telephone number. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) *with id*. at § 227(b)(1)(B); *see, e.g., Morris v. Lincare, Inc.*, No. 8:22-cv-2048-CEH-AAS, 2023 U.S. Dist. LEXIS 145522, at *9 (M.D. Fla. Aug. 18, 2023) ("It is worth noting that courts use 'home phone' and 'residential telephone' to refer to the TCPA's language 'residential telephone line.' While these terms are used by courts interchangeably, they are distinct from cell phones. *See, e.g., Barr v. Am. Ass'n of Political Consultants*, 140 S.Ct. 2335, 2345 n.3, 207 L. Ed. 2d 784 (2020) ('Plaintiffs have not challenged the TCPA's separate restriction on robocalls to home phones. See 47 U.S.C. §227(b)(1)(B)'); *Turizo v. Subway Franchisee Adver. Fund Trust Ltd.*, 603 F. Supp. 3d 1334, 1340 (S.D. Fla. 2019) ('The TCPA clearly draws a distinction between cellular telephones and residential telephones. Compare 47 U.S.C. §

---

[9] If Ramaswamy's political campaign calls had been successful it is Ramaswamy that would have been elected President of the United States—not his campaign.

13

227(b)(1)(A)(iii) . . . with id. § 227(b)(1)(B)'); *Sliwa v. Bright House Networks, LLC*, No. 2:16-cv-235-JES-MRM, 2016 U.S. Dist. LEXIS 93852, 2016 WL 3901378, at *2 n.2 (M.D. Fla. July 19, 2016) ('section 227(b)(1)(B) prohibits calls to residential telephone lines, not cell phones').").

The TCPA also delineates between exemptions for robocalls made to a "residential telephone line" versus robocalls made to a cellular telephone number. *Compare* 47 C.F.R. § 64.1200(a)(1)(iv) (exempting robocalls to cellular telephone numbers if "the call is placed to a wireless number that has been ported from wireline service and such call is a voice call; not knowingly made to a wireless number; and made within 15 days of the porting of the number from wireline to wireless service") *and id.* at § 64.1200(a)(2) (exempting robocalls made to a cellular telephone number if they deliver "a 'health care' message"") *with id*. at § 64.1200(3) (exempting five categories of robocalls to residential telephone numbers).

Consistent with this, in its "Rules for Political Campaign Calls and Texts"[10], the FCC expressly states that "Political campaign-related autodialed or prerecorded voice calls, including autodialed live calls, autodialed texts, and prerecorded voice messages, are prohibited to cell phones, pagers or other mobile devices without the called party's prior express consent." The FCC then distinguishes robocalls to wireless numbers from robocalls to "landline telephones" which are "permitted when made to landline telephones, even without prior express consent."

While the FCC has determined that, for purposes of claims under the TCPA's National Do Not Call Registry and internal do not call list provisions, a user of a wireless telephone number can be a "residential telephone subscriber," that FCC determination is expressly limited to the sections of the TCPA relating to the National Do Not Call Registry and internal do not call lists. 47 C.F.R. § 64.1200(e) ("The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing or text messages calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the

---

[10] https://www.fcc.gov/rules-political-campaign-calls-and-texts

Telephone Consumer Protection Act of 1991.'"). Notably, absent that FCC determination, there would arguably be no protection for cellular telephone users under the TCPA's National Do Not Call Registry and internal do not call list provisions. *Id*. at §§ 64.1200(c)-(d).

In contrast, for robocalls, there are express but different protections and exemptions expressly provided for wireless and residential numbers. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) *with id*. at § 227(b)(1)(B) *and* 47 C.F.R. §§ 64.1200(a)(1)-(2) *with id*. at § 64.1200(b). And the FCC has expressly stated that the exemptions for robocalls to residential numbers do not apply to political robocalls to wireless numbers.

The conclusion that Ramaswamy's argument requires, that the exemptions for robocalls to residential lines apply for robocalls to cellular lines requires the Court to ignore the plain language of the statute and its regulations and the FCC's clear guidelines relating to them.

There is therefore no basis to conclude that any of Ramaswamy's calls to Plaintiff were exempted from TCPA liability, and the Court should accordingly deny the motion to dismiss on this basis.

## CONCLUSION

Plaintiff Grant sufficiently alleges three independently sufficient bases for finding Ramaswamy liable for the political campaign calls based on Ramaswamy's actual participation in making and authorizing the calls, and that, as a result, Plaintiff's injuries were traceable to Ramaswamy's conduct.

And nothing in the TCPA or its implementing regulations provides an exception from liability for political robocalls to cellular telephones. To the contrary, the FCC has made specifically clear that such calls are subject to the TCPA.

The Court should therefore deny Ramaswamy's motion to dismiss.

Dated: April 22, 2024　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Avi R. Kaufman*
　　　　　　　　　　　　　　　　　　　Avi R. Kaufman (pro hac vice)

15

kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

Brian Giles (OH Bar No. 0072806)
bgiles@gilesharper.com
GILES & HARPER, LLC
7247 Beechmont Ave.,
Cincinnati, OH 45230
Telephone: (513) 379-2715

*Attorneys for Plaintiff and the putative Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.


*/s/ Avi R. Kaufman*
Avi R. Kaufman